WILLIAMSON AND UPTON *vs.* THE NEW JERSEY SOUTH-ERN RAILROAD COMPANY and others.

An application to compel a trustee for mortgage bond-holders to redeem certain property, refused; the necessities of the trust estate not being regarded by the court such as to make it its duty to make the order, and an agreement, which was the foundation of the application, being held to be merely executory, essentially outside of the main issues in the cause, and practically for the benefit of only the parties who may enter into it, without regard to the interests of others interested in the trust estate.

Bill to foreclose. On petition of Henry Day and others, representing certain first mortgage bond-holders, for an order directing the trustee under that mortgage to redeem the East End Hotel property at Long Branch.

*Mr. A. Q. Keasbey* and *Mr. John W. Sterling* (of New York,) for the petitioners.

*Mr. B. Gummere*, for B. Williamson, trustee.

THE CHANCELLOR.

According to the petition, a large majority of the holders of the first mortgage bonds and a large number of the holders of the second mortgage bonds of the New Jersey Southern Railroad Company, have entered into an agreement of settlement with the defendant Jay Gould, by which, for considerations therein expressed, he is to consent to a decree (apparently, but only apparently, in conformity with part of the prayer of the supplemental bill in this suit,) as against him, and is to execute the decree, when so made, so far as the property covered by the stipulation is concerned. A part of the property claimed by the supplemental bill to be subject to the complainants' mortgage, is the property known as the East End Hotel, at Long Branch, with its fixtures, furniture, &c., the title to which is in Mr. Gould. There are decrees in foreclosure suits against that property, on mortgages prior to that of the complainants, amounting at this time to about $50,000, and there are taxes due upon the property. The petition states that the loss of the property to the bond-holders, by reason of these encumbrances, is imminent, but may be prevented by the timely payment of about $1500, and it prays that the trustee of the first mortgage bond-holders, who is in possession of the Southern and Sea Shore railroads as mortgagee, and has accordingly been, and still is, receiving the income thereof, may be required to pay the $1500 to save the property. The petitioners have submitted affidavits as to the value of the property. The valuations thus presented are of a general character, are opinions merely, and range from $50,000 to $70,000. The trustee declines to pay the money except by order of this court. He insists that he cannot safely do so, and that the property is worth but little, if any, more than the encumbrances under which it is advertised to

be sold, and he is of opinion that the interests of the trust will be far better served by leaving him to exercise his discretion to purchase or not at the sale, than by requiring him to redeem. The agreement which appears to have been entered into with Mr. Gould is as yet entirely executory. He agrees for a consideration to be secured to him, to control, to the end that they may be sold under the final decree to be made in this suit, as part of the property mortgaged to the complainants, the sixteen hundred and nineteen shares of the stock of the Sea Shore company, mentioned in the supplemental bill, and therein claimed to have been fraudulently acquired and disposed of by him, and to permit the East End Hotel to be sold under the decree as part of the mortgaged premises, and to execute a deed of conveyance therefor to the purchaser.

It would be enough to say, in regard to this application, that the arrangement rests wholly in agreement, and only a majority (though it is said to be a large majority,) of the bond-holders have consented to it. Whether it is one which the court, having regard to the interest of all the bond-holders, would sanction or recognize, if called upon to do so, it is not necessary to determine. It is not submitted for sanction, and I do not feel called upon to recognize it. The court is asked to base an order upon it, directing the trustee to make payments on the faith of its execution. The petitioners' counsel insist that the suit is, by this agreement, practically ended in accordance with the views and theory on which the supplemental bill was filed. Were it, indeed, at an end by a decree in accordance with the prayer of the supplemental bill, the court would not hesitate to make the order, on being satisfied that it was for the benefit of the trust estate to redeem the property. But the agreement for settlement is very far from a concession on the part of Mr. Gould and his co-defendants claiming the property in dispute, of the right of the complainants to the relief sought by the supplemental bill.

Part of the prayer of that bill is that it may be decreed that the New Jersey Southern Railroad Company owed nothing to Mr. Gould when he became possessed of the sixteen hundred

and nineteen shares of stock, and that to that end an account may be taken of his dealings with that company, and its earnings and property, either through its directors or otherwise; and that it may be decreed that he acquired no title to the stock, and that his sale thereof may be decreed to have been illegal and fraudulent, and may be set aside; and that James and Field may be decreed to have no valid title to the stock, and to surrender the certificate thereof; and that the steamboats "Jesse Hoyt" and "Plymouth Rock" may be decreed to be the property and part of the plant of the New Jersey Southern Railroad Company, and subject to the lien of the complainants' mortgage; and that Mr. Gould may be decreed to redeem the same from all maritime liens thereon, and from any pretended sale thereof, and return those steamboats within the jurisdiction of this court, to the end that they may be sold under the decree in this cause; and that for the same end Mr. Gould may be decreed to return within the jurisdiction of this court, two locomotive engines, one passenger car, thirty-three flat cars, and ten box cars, belonging to the New Jersey Southern Railroad Company, and covered by the complainants' mortgage, and which were removed by him, and, at the filing of the bill, were alleged to be held by him on his railroad in Delaware and Maryland, and that the locomotives and cars may be decreed to be subject to the complainant's mortgage; and that the East End Hotel, and the furniture and equipment thereof, may be decreed to be the property and part of the plant of the New Jersey Southern Railroad Company, and not the property of Mr. Gould, or of any other person, and to be subject to the lien of the complainants' mortgage.

It will be seen that the claim to the stock and to the East End Hotel, as the property of the New Jersey Southern Railroad Company, has been, to a great extent, abandoned in the settlement; and the claim to an account, and to the steamers and locomotive engines and cars, has been wholly so. By the agreement, Mr. Gould, in consideration of the transfer of the stock and hotel property, is to receive in the new organization, (in case it should include the Southern and Sea Shore Rail-

roads, with the sixteen hundred and nineteen shares of stock, and the hotel property merely,) $104,000 in first mortgage bonds, and $87,500 in preferred stock, in satisfaction, according to the language of the agreement, of certain claims against the stock and hotel, which the bond-holders signing the agreement, agree to allow. In case the stock should be sold under the decree to any other parties, he is to have $220,000 out of the proceeds of the sale. The holders of the sixteen hundred and nineteen shares of stock are not, as it appears by the agreement, parties to the arrangement. Mr. Gould, indeed, undertakes to obtain a proper transfer of that stock from the present holders thereof to the purchaser under the decree, and agrees that he and the Long Branch and Sea Shore Railroad Company, and Messrs. Field and James, or any other parties claiming to own the stock, shall withdraw their opposition to the suit, and consent to a decree of foreclosure and sale of the Southern Railroad, including the sixteen hundred and nineteen shares of stock and the hotel. He may not be able to accomplish this. But, however that may be, the agreement, if its terms were regarded as a satisfactory settlement of the matters in controversy in this suit, being merely executory, would not be sufficient foundation for the order which is sought. Moreover, the smallness of the amount of money required to preserve the property, warrants the conviction that those who are interested in the settlement do not need the aid of the court in the premises. Their agreement provides for the purchase by them of the mortgaged premises at the sale under the final decree to be entered in the cause, with a view to a new organization, in which the parties to the agreement are to be interested. It is essentially an arrangement outside of the suit, and practically for the benefit of those alone who may enter into it. I do not regard the necessities of the trust estate as being such as to make it my duty, irrespective of the agreement, to grant the prayer of the petition. The petition will be dismissed.